IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES WEATHINGTON, | ) No. C 05-2923 CW (PR) |
| Petitioner, | ) |
| v. | ) ORDER DENYING PETITION FOR<br>) WRIT OF HABEAS CORPUS |
| CAPTAIN TOBY K. WONG, Main<br>Jail Complex Commander,<br>County of Santa Clara<br>Department of Correction, | ) |
| Respondent. | ) |

INTRODUCTION

Petitioner Charles Weathington, a state prisoner who is incarcerated at the Santa Clara County Main Jail Complex, filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging on several grounds the validity of his conviction.

Respondent has filed an answer. Petitioner has filed a traverse. Having considered all of the papers filed by the parties, the Court DENIES the petition for a writ of habeas corpus.

BACKGROUND

According to the allegations in the petition, Petitioner was charged with five counts of issuing checks on insufficient funds pursuant to California Penal Code § 476a. In November, 2000, he was found guilty by a jury on two counts. The trial court found Petitioner's five prior convictions true under California Penal Code § 667 and struck four of his prior convictions pursuant to California Penal Code § 1385. He was sentenced to seven years and four months in state prison.

1    Petitioner filed a timely notice of appeal.  On December 22,

2    2003, the California Court of Appeal affirmed the conviction.

3    (Resp't Ex. 6.)  On April 14, 2004, the California Supreme Court

4    denied the petition for review.  (Resp't Ex. 7.)

5        On July 19, 2005, Petitioner filed the present federal

6    petition for writ of habeas corpus.  He raises the following three

7    claims for relief:  (1) there was insufficient evidence to support

8    the conviction; (2) the trial court erred in admitting prior

9    uncharged acts of writing bad checks; and (3) the prosecutor

10   committed misconduct by commenting on Petitioner's failure to

11   testify at trial.

12                       STATEMENT OF FACTS

13       In its written opinion, the California Court of Appeal

14   summarized the factual background as follows:

15           This is a bad check case, in which defendant engaged in
             transactions with two computer companies, writing
16           checks to the companies that were returned for
             insufficient funds.  In one transaction, defendant sold
17           computer hardware that did not conform to his
             representation.  Defendant's refund check to the
18           company was returned for insufficient funds.  In the
             second transaction, defendant purchased computer
19           hardware from another company with a check written on
             insufficient funds.  Defendant wrote the checks on May
20           26 and 27, 1994.  In the week preceding May 26 and 27,
             1994, defendant had five other checks returned to
21           payees for insufficient funds.  These checks totaled
             $3,314.
22
             Count 1 -- Palo Alto Computers
23
             On the morning of May 27, 1994, defendant deposited a
24           $3,000 cashier's check in his Bank of America checking
             account.  Shortly thereafter, defendant went to Palo
25           Alto Computers to purchase computer memory.  Defendant
             paid $1,700 for the memory to David Wu by check drawn
26           on his Bank of America  account.  When Wu called Bank
             of America, the bank verified that defendant's account
27           contained sufficient funds to cover the $1,764 check.

28           After leaving Palo Alto Computers, defendant

                              2

transferred $800 out of his checking account, and an unspecified individual withdrew another $1,450 from defendant's account by presenting a check to Bank of America, payable to cash. Palo Alto Computers was unable to cash defendant's check, because it was returned due to insufficient funds in the account.

Count 2 -- Centurian Computer Surplus

On the morning of May 26, 1994, the day before defendant bounced the check to Palo Alto Computers, defendant offered to sell Centurian Computer Surplus a package of computer memory. Centurian's owner, Jorge Lovato accepted defendant's offer, and paid him $5,000 for the memory by check. After defendant left the store, Lovato inspected the memory and realized it did not conform to defendant's representations. After discovering the problem with the memory, Lovato instructed Renee Barry-Robles, Centurian's Chief Financial Officer, to place a stop-payment order on the $5,000 check. Barry-Robles informed Lovato it was too late to order a stop payment, because defendant had already cashed the check.

In the early afternoon that same day, defendant deposited $4,300 in cash into his Bank of America checking account. Defendant then returned to Centurian to pick up a puppy he had purchased during his morning visit to the store. Lovato confronted defendant about the nonconforming merchandise, and defendant agreed to refund Lovato $2,300. Defendant wrote Lovato a check for $2,300 drawn on his Bank of America checking account, post-dated to May 27, 1994. Lovato testified that defendant did not tell him to hold the check, but that he [Lovato] told defendant that he would be depositing the check the following day. Lovato also testified that defendant told him the check was good for deposit.

At 5:40 p.m. on May 26, 1994, defendant purchased a $3,500 cashier's check from Bank of America. Twelve minutes later, defendant cashed the $3,500 cashier's check, kept $500 cash and used the remaining $3,000 to purchase another cashier's check.

Barry-Robles took the $2,300 check to the bank to deposit it after the close of business on May 26, 1994. The check was returned due to insufficient funds. When Lovato eventually found defendant and confronted defendant about the insufficient funds, defendant gave Lovato $200 cash, and promised to repay the remainder the following day.

Defendant did not pay Lovato the following day, and instead defendant's brother paid Lovato the outstanding

balance in 1995.[FN2][1]  The information also alleged
that defendant had five prior convictions under the
"Three Strikes" law.  (§§ 667, 1170.12.)

The court sustained defendant's demurrer to counts 3
and 4 for failure to commence prosecution within the
statute of limitations.[FN3][2]

(Resp't Ex. 6 at 4-8 (brackets and footnotes in original).)

STANDARD OF REVIEW

A federal writ of habeas corpus may not be granted with

respect to any claim that was adjudicated on the merits in state

court unless the state court's adjudication of the claims:

"(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in

the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may

grant the writ if the state court arrives at a conclusion opposite

to that reached by [the Supreme] Court on a question of law or if

---

[1] FN2.  When he received the check from defendant's brother,
Lovato signed a declaration stating that at the time defendant wrote
the check, defendant told him there was not enough money in the
account to cover the check and that Lovato should hold the check until
the following day.  At trial, Lovato testified that he only signed the
declaration to get his money back and that defendant's brother told
him what to say.  In addition, Lovato testified that defendant never
told him that there was not enough money in the account to cover the
check.

[2] FN3.  Count 3 alleged defendant wrote a check in December 1992
for $5,103.39 to Comtech Group, Inc., a computer parts distributor,
that was returned for insufficient funds.  Count 4 alleged that
defendant wrote a check in January 1993 for $1,000 to Comtech, in an
effort to satisfy the debt defendant incurred through the bouncing of
the first check.  The $1,000 check also bounced.  Although the court
sustained a demurrer to these counts, it admitted evidence of these
uncharged acts at trial pursuant to Evidence Code section 1101(b).

4

the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the relevant state court decision. <u>Id.</u> at 412.

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Where, as here, the highest state court to reach the merits issued a summary opinion which does not explain the rationale of its decision, federal court review under § 2254(d) is of the last state court opinion to reach the merits. <u>Bains v. Cambra</u>, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of Petitioner's claims is the opinion of the California Court of Appeal.

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" <u>Penry v. Johnson</u>, 532 U.S. 782, 795 (2001) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993)).

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISCUSSION

I.   Insufficiency of Evidence

Petitioner claims that the appellate court's decision was unreasonable because there was insufficient evidence to support his two convictions for writing checks with insufficient funds on deposit, in violation of California Penal Code § 476a.[3]  Petitioner also argues that he presented evidence that he had disclosed to the payee that there were insufficient funds to cover the check he wrote to Centurian as an affirmative defense to the intent element. (Traverse at 5.)

The appellate court rejected Petitioner's claim based on the following factual and legal analysis:

> Proof of a violation of section 476a requires a showing that defendant wrote checks to Centurian and Palo Alto Computers (1) acting with the specific intent to defraud; (2) at the time the checks were written and delivered, there were not sufficient funds in the bank upon which the checks were drawn to pay in full upon their presentation and all other outstanding checks; and (3) the defendant knew of the insufficiency of the funds when he wrote the checks.  (§ 476a; CALJIC No. 15.20.)
>
> In reviewing the sufficiency of the evidence, "'[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]"  (People v. Johnson, (1980) 26 Cal.3d 557, 576.)  Further, "'The test is whether substantial evidence supports the [conclusion of the trier of fact], not whether the evidence proves

_____

[3]   In People v. Swanson, 123 Cal. App. 3d 1024 (2d Dist. 1981), the California Court of Appeal held that the essential elements to prove the offense of issuing a check without sufficient funds under California Penal Code § 476a(a) are: (1) the making, drawing, uttering or delivering of the check with (2) insufficient funds or credit with the drawee bank at the time the check was made, (3) knowledge of the lack of sufficient funds, (4) and the intent to defraud. Knowledge of insufficient funds may be proven by circumstantial evidence as well as direct evidence.

guilt beyond a reasonable doubt.' [Citations.]"
(<u>People v. Crittenden</u>, (1994) 9 Cal.4th 83, 139.)

In this case, there was sufficient evidence to support
the jury's finding that the three elements of writing a
check on insufficient funds were present on counts 1
and 2.

Count 1 -- Palo Alto Computers

Defendant contends the fact that Wu called the bank to
verify that defendant had sufficient funds in his
account on the day defendant wrote the check negates
the element of intent to defraud. However, the fact
that Wu called the bank to verify funds in the account
had no impact on whether <u>defendant</u> wrote the check with
the intent to defraud Palo Alto Computers. Indeed, it
was reasonable for the jury to conclude that
defendant's act of withdrawing $3,500 from his account
the day before he wrote the check, and re-depositing
$3,000 the same day was done to <u>create</u> the balance
reflected by the bank's verification and defraud Palo
Alto Computers into believing he had sufficient funds
in the account to cover the check.

In addition, defendant's contention that the jury
should not have considered the five outstanding checks
totaling $3,314 in determining if his account had
sufficient funds is incorrect. A violation of section
476a requires insufficient funds "for the payment [of
the check in question] . . . <u>and all other
checks, . . . upon such funds then outstanding</u>, . . ."
(§ 476a, [emphasis] added.) Moreover, once returned
for insufficient funds, a check may be re-submitted to
the bank for up to six months from the date the check
was written. As a result, a reasonable juror could
conclude that the outstanding checks in defendant's
account totaling $3,314 made defendant's account
insufficient to cover the check to Palo Alto Computer
[sic].

Count 2 -- Centurian Computer Surplus

Defendant contends there was insufficient evidence of
his intent to defraud Centurian, because he post-dated
the check for the following day. When a payee has
knowledge at the time he accepts a check that the
drawer does not have funds at the bank to cover the
check, there is insufficient evidence to support a
conviction for a violation of section 476a. (<u>People v.
Poyet</u> (1972) 6 Cal.3d 530.) The court in <u>Poyet</u> stated,
"No matter how fraudulent the promise to make a deposit
sufficient to cover a check, disclosure of the present
insufficiency of funds precludes conviction . . . ."
(<u>Id.</u> at p. 536.)

Although disclosure of the present insufficiency of funds is sufficient to negate the intent to defraud, the writing of a post-dated check <u>alone</u> is insufficient. (<u>Poyet</u>, <u>supra</u>, 6 Cal.3d at p. 533.) The evidence conflicts on whether defendant told Lovato there were insufficient funds in defendant's account to cover the check. In his declaration, Lovato stated defendant told him the account was insufficient to cover the check. However, at trial, Lovato testified that he only signed the declaration to be paid the money defendant owed him, and further stated: "When [defendant] gave me the check, he said it was good, to put it in, it was good for deposit." Although defendant wrote a post-dated check, the evidence was sufficient to support the conclusion that defendant did not inform Lovato that the account contained insufficient funds.

Additionally, the representations Lovato may have made to defendant that he [Lovato] would not deposit the check until the following day, or the representations the bank made to Lovato regarding defendant's account balance does not negate <u>defendant's</u> intent to defraud Centurian. The fact that defendant withdrew $3,500 from his account at the close of business on May 26, 1994, and re-deposited $3,000 shortly after the bank opened the next day could lead a reasonable trier of fact to believe that defendant was trying to avoid the bank's payment of the check to Centurian, and therefore, had the intent to defraud Centurian when he wrote the check.

Defendant contends the evidence was insufficient to support a finding that his account actually contained insufficient funds, because his balance contained enough to cover the check at the time he wrote it. However, a violation of section 476a requires insufficient funds "for the payment [of the check in question] . . . and all other checks, . . . upon such funds then outstanding, in full upon its presentation." (§ 476a)

At the time he wrote the check to Centurian, defendant's account balance was $3,912,57, an amount sufficient to cover the $2,300 check. However, defendant also had $3,314 of outstanding checks. Therefore, defendant would have needed at least $5,614 in his account to cover the $2,300 check to Centurian in addition to his remaining outstanding checks, making his account balance insufficient.

Defendant's contention that the $3,314 worth of outstanding checks could not be considered in determining if the account had sufficient funds because he could have satisfied the debts resulting from the

checks outside the banking system is incorrect. As discussed above, evidence that defendant wrote $3,314 worth of checks that were returned for insufficient funds, and that the checks could be resubmitted at any time for up to six months, is sufficient to support the jury's conclusion that the account contained insufficient funds.

Contrary to defendant's assertion, we do not believe the fact that defendant looked at his account balance on May 28 and 29, 1994, provides, "undisputed evidence that [he] believed he had enough money in his account on the day the checks were written," thus, negating the element of knowledge. Initially, defendant wrote the checks in this case on May 26 and 27, 1994, not the days he looked at his account balance. In addition, the fact that defendant looked at his balance of $3,747.57 does not demonstrate that he knew he had sufficient funds, because prior to writing the checks charged in this case, defendant wrote checks totaling $3,314, all of which were returned for insufficient funds. Coupled with the two checks in this case, the outstanding checks left defendant's account balance insufficient by $1,700. Therefore, regardless of the fact defendant looked at of [sic] his account balance, the jury could reasonably conclude that he knew the account contained insufficient funds to cover the check to Centurian.

(Resp't Ex. 6 at 4-8 (brackets and emphasis in original).)

Petitioner claims that the appellate court's decision, as to both counts, is unreasonable because "the evidence demonstrates that there was money in the account at the time the check[s] [were] written and delivered, but removed shortly thereafter." (Pet. at 6-A.)

A.   Applicable Federal Law

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to

find guilt beyond a reasonable doubt therefore states a constitutional claim, which, if proven, entitles him to federal habeas relief. See <u>Jackson v. Virginia</u>, 443 U.S. 307, 321, 324 (1979).

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. <u>Payne v. Borg</u>, 982 F.2d 335, 338 (9th Cir. 1992), <u>cert. denied</u>, 510 U.S. 843 (1993). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" See <u>id.</u> (quoting <u>Jackson</u>, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. See <u>Jackson</u>, 443 U.S. at 324; <u>Payne</u>, 982 F.2d at 338; <u>Miller v. Stagner</u>, 757 F.2d 988, 992-93 (9th Cir.), <u>amended</u>, 768 F.2d 1090 (9th Cir. 1985), <u>cert. denied</u>, 475 U.S. 1048 (1985); <u>Bashor v. Risley</u>, 730 F.2d 1228, 1239 (9th Cir.), <u>cert. denied</u>, 469 U.S. 838 (1984).[4]

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume -- even if it does not

---

[4] The Ninth Circuit has left open the question whether 28 U.S.C. § 2254(d) requires an additional degree of deference to a state court's resolution of sufficient evidence claims. See <u>Chein v. Shumsky</u>, 373 F.3d 978, 982-83 (9th Cir. 2004) (en banc); <u>Bruce v. Terhune</u>, 376 F.3d 950, 956-57 (9th Cir. 2004). However, five other circuits have concluded that a sufficiency of the evidence claim presents a legal determination that must be evaluated through the AEDPA standard of review embodied in § 2254(d)(1). No circuit has explicitly held that a state court's <u>Jackson</u> inquiry is exempt from AEDPA's standard of review. <u>Bruce</u>, 376 F.3d at 958-59 (O'Scannlain, J., concurring specially).

affirmatively appear on the record -- that the trier of fact

resolved any such conflicts in favor of the prosecution, and must

defer to that resolution." Jackson, 443 U.S. at 326. A jury's

credibility determinations are therefore entitled to near-total

deference. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).

Except in the most exceptional of circumstances, Jackson does not

permit a federal habeas court to revisit credibility determinations.

See id. at 952.

The prosecution need not affirmatively rule out every

hypothesis except that of guilt. Wright v. West, 505 U.S. 277, 296-

97 (1992) (quoting Jackson, 443 U.S. at 326). The existence of some

small doubt based on an unsupported yet unrebutted hypothesis of

innocence therefore is not sufficient to invalidate an otherwise

legitimate conviction. See Taylor v. Stainer, 31 F.3d 907, 910 (9th

Cir. 1994). Circumstantial evidence and inferences drawn from that

evidence may be sufficient to sustain a conviction. Walters v.

Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). Mere suspicion and

speculation, however, cannot support logical inferences. Id.

B.   Analysis

Viewing the evidence in the light most favorable to the

prosecution and resolving any conflicting inferences in favor of the

prosecution, the Court finds that "a rational trier of fact could

have found the essential elements of the crime beyond a reasonable

doubt." Payne, 982 F.2d at 338. That is, a rational juror could

have found that the evidence was sufficient to show that there were

not enough funds in Petitioner's bank account when the checks in

question were issued or presented.

Regarding count one, the appellate court's decision rejecting

11

Petitioner's argument was not unreasonable.  Although Petitioner

contends that the evidence was insufficient to establish intent to

defraud, the appellate court was not unreasonable in finding that

the circumstantial evidence and inferences drawn from that evidence

were sufficient to sustain the conviction.  <u>Walters</u>, 45 F.3d at

1358.  Petitioner alleges that the fact that Wu called the Bank of

America to verify that Petitioner had funds in his account indicates

that Petitioner lacked the specific intent to defraud because Wu had

actual knowledge of the insufficiency in the bank account.

(Traverse at 2.)  However, as the appellate court reasoned, "the

fact that Wu called to verify funds in the account had no impact on

whether <u>defendant</u> wrote the check with the intent to defraud Palo

Alto Computers." (Resp't Ex. 6 at 5 (emphasis in original).)  By

his own admission, Petitioner withdrew funds from his account

shortly after delivering the check to Wu.  (Pet. at 6-A.)

Petitioner transferred $800 from his account the day he wrote the

check to Wu.  Later that same day, he had an unspecified individual

withdraw an additional $1,450.  Petitioner did not tell Wu that he

intended to transfer funds from his account.  When Wu attempted to

cash the check the following day, it was returned due to

insufficient funds in Petitioner's account.  Furthermore, the jury

was not required to accept Petitioner's defense that he lacked the

specific intent to defraud.

     As to count two, Petitioner contends that the evidence is

insufficient to establish the second prong of California Penal Code

§ 476a because he post-dated the check to Centurian for May 27,

1994.  To support his argument, Petitioner relies on <u>People v.</u>

<u>Poyet</u>, 6 Cal. 3d 530 (1972) for the conclusion that "[n]o matter

12

how fraudulent the promise to make a deposit sufficient to cover the check, disclosure of the present insufficiency of funds precludes conviction under . . . section [476a]." (Traverse at 4 (citing Poyet, 6 Cal. 3d at 536).) However, the Poyet court also noted that the fact alone that a check is postdated is not a defense to California Penal Code § 476a. See Poyet, 6 Cal. 3d at 534. Furthermore, Petitioner's contention that there were sufficient funds in the account because on May 28, 1994 the account balance was $2999.57 is unavailing. As the appellate court noted, the May 28 balance does not negate Petitioner's intent to defraud Centurian. (Resp't Ex. 6 at 6.) The gravamen of the offense charged was Petitioner's delivery of a check to Lovato, his act of withdrawing $3,500 from his account at the close of business on May 26, the day the check was issued, and re-depositing $3,000 shortly after the bank opened the next day. Petitioner knew that his account would be depleted and, under the circumstances, the record supports an inference that he issued the check to Centurian with the intent to defraud. Therefore, the appellate court did not unreasonably find that the jury's verdict as to count two was adequately supported by the evidence.

Accordingly, the appellate court's rejection of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, 28 U.S.C. § 2254(d)(2). Therefore, this claim for habeas corpus relief is denied.

II.  Improper Admission of Prior Bad Acts

Petitioner claims that the trial court erred by admitting

13

evidence of prior acts of passing bad checks because the evidence

was more prejudicial than probative under California Evidence Code

§ 352.[5]  (Pet. at 6-B.)

In rejecting Petitioner's claim, the appellate court reasoned:

> The trial court admitted evidence of defendant's prior
> conduct of writing bad checks on the ground that such
> conduct was relevant to prove a common plan or method
> and intent pursuant to Evidence Code section 1101,
> subdivision (b).  The court admitted defendant's prior
> acts of writing bad checks to Comtech in 1992 and
> 1993,[FN4][6] and defendant's conduct of writing a check
> on insufficient funds and depositing it into his
> savings account at Provident Credit Union.  Defendant
> then withdrew most of the cash from the savings
> account, leaving the account with a substantial
> shortfall.
>
> Evidence Code section 1101, subdivision (b) permits
> "the admission of evidence that a person committed a
> crime, civil wrong, or other act when relevant to prove
> some fact (such as motive, opportunity, intent,
> preparation, plan, knowledge, identity, absence of
> mistake or accident, or whether a defendant in a
> prosecution for an unlawful sexual act or attempted
> unlawful sexual act did not reasonably and in good
> faith believe that the victim consented) other than his
> or her disposition to commit such an act."  Further, on
> appeal, the trial court's determination of whether
> prior uncharged acts should be admitted pursuant to
> Evidence Code section 1101, "being essentially a
> determination of relevance, is reviewed for abuse of
> discretion.  [Citations.]"  (People v. Kipp , (1998) 18
> Cal.4th 349, 369.)  The determination whether such
> evidence should be excluded pursuant to Evidence Code
> section 352 is also reviewed for abuse of discretion.
> (Ibid.)
>
> The two prior incidents of defendant's bad check
> writing and the crimes charged in the instant case were
> sufficiently similar to demonstrate a common plan under

---

[5] Respondent argues that Petitioner merely alleges state law error and does not present any constitutional issue; however, the Court finds that, liberally construed, Petitioner has pleaded a federal due process violation.  Respondent further argues that Petitioner's due process claim is unexhausted.  Although Petitioner has failed to exhaust this claim, the Court may deny an unexhausted claim on the merits.  See 28 U.S.C. § 2254(b)(2).

[6] FN4.  The conduct alleged in counts 3 and 4 of the information.

14

Evidence Code section 1101, subdivision (b). In <u>People v. Ewoldt</u>, (1994) 7 Cal.4th 380, the California Supreme Court explained that the admissibility of evidence pursuant to section 1101, subdivision (b) depends on the degree of similarity between the uncharged act and the charged offense. In overruling <u>People v. Tassell</u>, (1984) 36 Cal.3d 77, the court held that "evidence of a defendant's uncharged misconduct is relevant where the uncharged misconduct and the charged offense are sufficiently similar to support the inference that they are manifestations of a common design or plan." (<u>People v. Ewoldt</u>, <u>supra</u>, 7 Cal.4th at pp. 401-402.) The degree of similarity needed to prove the existence of a common design or plan is less than that needed to prove identity. (<u>Id.</u> at pp. 402-403.) The evidence need only show "'such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations' [citation]" (<u>Id.</u> at pp. 393-394), "but the plan thus revealed need not be distinctive or unusual." (<u>Id.</u> at p. 403.) A concurrence of common features, if capable of being naturally explained as caused by a common plan, will suffice. (<u>People v. Balcom</u>, (1994) 7 Cal.4th 414, 423-424.)

Like <u>Ewoldt</u>, in the instant case, there were common features among the charged counts of writing bad checks and the uncharged incidents such that evidence of the uncharged incidents could be admitted to show a common design or plan. Specifically, in both the charged and uncharged incidents, defendant wrote checks that were returned for insufficient funds. In addition, like the present offenses, the Comtech incident involved defendant bouncing two checks to a computer store.[FN5][7] Further, like the present offenses, in the Provident incident, defendant wrote a check on an account and later withdrew the money from the account before the check could be paid. Although the prior uncharged offenses are not identical to the present crimes, the similarities are such that they demonstrate a common design or plan. As the court explained in <u>Ewoldt</u>, there is no requirement that there be a "'signature'" similarity of the acts to show a common plan or design. (<u>See</u> <u>People v. Ewoldt</u>, <u>supra</u>, 7 Cal.4th at p. 403.) As a result, although the uncharged acts and the charged crimes do not necessarily show a "'signature,'" they are sufficiently similar to demonstrate a common plan. (<u>Ibid.</u>)

---

[7] FN5. Defendant claims the Comtech incident is not relevant to [sic] because it happened too long ago. However, the Comtech incident was not remote to the current case, having occurred 17 months prior to the crimes charged.

15

In addition to being admissible to prove a common plan,
evidence of the uncharged acts was admissible to show
intent under Evidence Code section 1101, subdivision
(b).  The Ewoldt court explained the standards for
admissibility of evidence to prove intent as follows:
"The least degree of similarity (between the uncharged
act and the charged offense) is required in order to
prove intent.  [Citation.]  '[T]he recurrence of a
similar result . . . tends (increasingly with each
instance) to negative accident or inadvertence or
self-defense or good faith or other innocent mental
state, and tends to establish (provisionally, at least,
though not certainly) the presence of the normal, i.e.,
criminal, intent accompanying such an act . . . .'
[Citation.]  In order to be admissible to prove intent,
the uncharged misconduct must be sufficiently similar
to support the inference that the defendant '"probably
harbor[ed] the same intent in each instance."
[Citations.]'  [Citation.]"  (People v. Ewoldt, supra,
7 Cal.4th at p. 402.)

In the present case, the charged and uncharged
incidents of bad check writing were sufficiently
similar "to support the inference that the defendant
'"probably harbor[ed] the same intent in each
instance."  [Citations.]'  [Citation.]"  (People v.
Ewoldt, supra, 7 Cal.4th at p. 402.)  Specifically, the
same intent in both instances was to defraud a check
payee by manipulation of account balances.  Because of
the similarity between the two incidents, evidence of
the prior incidents of passing bad check was probative
of appellant's intent to commit check fraud in the
present case.

Defendant contends that the combination of the two
prior incidents of passing bad checks was unduly
prejudicial and "served to create an impression with
the jury that [defendant] was a crook."  However, even
without reference to the prior bad acts, the facts of
the crimes charged in this case demonstrate defendant's
proclivity toward criminality.  Considered in light of
its probative value to prove common plan and intent,
evidence of prior acts of passing bad checks was
admissible under Evidence Code section 352.  The trial
court's decision to admit the evidence did not "fall[]
outside the bounds of reason," such that it must be
reversed on appeal.  (People v. DeSantis (1992) 2
Cal.4th 1198, 1226.)

The trial court did not err in admitting evidence of
the prior acts of passing bad checks under Evidence
Code section 1101, subdivision (b).  The evidence is
admissible to demonstrate both common plan and intent,
and is more probative than prejudicial under Evidence

16

Code section 352.

2  (Resp't Ex. 6 at 8-11 (brackets and footnotes in original).)

3      A.   Applicable Federal Law

4      Erroneous state evidentiary rulings are not cognizable in

5  federal habeas corpus proceedings unless the admission of evidence

6  violated the petitioner's rights under the Constitution.  Estelle

7  v. McGuire, 502 U.S. 62, 67 (1991).  The Due Process Clause of the

8  Fourteenth Amendment provides the framework for evaluating claims

9  based on alleged constitutional error in state court evidentiary

10 rulings.  See Pulley v. Harris, 465 U.S. 37, 41 (1984).  Permitting

11 a jury to hear evidence of prior crimes or bad acts may violate due

12 process.  See Marshall v. Lonberger, 459 U.S. 422, 438-39 n.6

13 (1983); Fritchie v. McCarthy, 664 F.2d 208, 212 (9th Cir. 1981)

14 (citing Spencer v. Texas, 385 U.S. 554, 561 (1967)).  But a federal

15 court cannot disturb on due process grounds a state court's decision

16 to admit evidence of prior crimes or bad acts unless the admission

17 of the evidence was arbitrary or so prejudicial that it rendered the

18 trial fundamentally unfair.  See Walters, 45 F.3d at 1357; Colley v.

19 Sumner, 784 F.2d 984, 990 (9th Cir.), cert. denied, 479 U.S. 839

20 (1986).

21     The admission of other crimes evidence violates due process

22 where there are no permissible inferences the jury can draw from

23 the evidence (in other words, no inference other than conduct in

24 conformity therewith).  See McKinney v. Rees, 993 F.2d 1378, 1384

25 (9th Cir. 1993); Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir.

26 1991).  The relevance of the evidence of other bad acts to motive

27 or intent, the opportunity for the jury to weigh the credibility of

28 the witness's account of the other bad acts, and the trial court's

use of a cautionary instruction to limit the jury's consideration of the other bad acts all are factors a federal court may consider to determine whether a due process violation occurred. <u>See</u> <u>Houston v. Roe</u>, 177 F.3d 901, 910 n.6 (9th Cir. 1999) (admission of similar prior bad acts to show motive and intent, coupled with limiting instructions, was appropriate). Juries are presumed to follow a trial court's limiting instructions with respect to the purposes for which evidence is admitted. <u>Aguilar v. Alexander</u>, 125 F.3d 815, 820 (9th Cir. 1997).

B. Analysis

California evidence rules are analogous to the federal rules. Evidence that is admissible under California Evidence Code § 1101 is limited by California Evidence Code § 352. California Evidence Code § 352 parallels Rule 403 of the Federal Rules of Evidence because it permits a trial judge to exclude evidence when its probative value is substantially outweighed by its prejudicial effect. <u>See</u> Cal. Evid. Code § 352.

In relevant part, California Evidence Code § 1101 excludes, with specified exceptions, character evidence in the form of specific instances of conduct, unless such evidence is relevant to prove some fact such as motive, intent or plan. Cal. Evid. Code § 1101. In other words, the prosecution cannot introduce the evidence simply to show defendant has a propensity to commit crimes. <u>See</u> Cal. Evid. Code § 352. To be admissible under this section, the evidence must be introduced to prove a material fact; the uncharged offense must have a tendency to prove the material fact; and admission of the evidence must not violate another rule or policy. <u>Id.</u> Also, the trial court must determine that its

18

probative value outweighs its prejudicial effect.  Id.

Here, the appellate court was not unreasonable in finding that Petitioner's previous acts -- writing bad checks to Comtech in 1992 and 1993, as well as writing a check from his Provident Credit Union account and later withdrawing the money from that account before the check could be paid -- have a tendency to prove intent. As the appellate court reasoned, the prior bad acts of writing bad checks were material and tended to show Petitioner acted with a common plan or scheme in all the incidents. (Resp't Ex. 6 at 9 (citing People v. Ewoldt, 7 Cal. 4th 380, 403 (1994)).)

Furthermore, the United States Supreme Court has expressed no opinion on whether a state law, such as California Evidence Code § 1101 in the present case, would violate the Due Process Clause if it permitted the use of "prior crimes" evidence to show propensity to commit a charged crime.  See Estelle, 502 U.S. at 75 & n.5 (declining to rule on the constitutionality of propensity evidence); Alberni v. McDaniel, 458 F.3d 860, 864-67 (9th Cir. 2006).  Because habeas relief may not be granted unless the state court decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, see 28 U.S.C. § 2254, and there is no Supreme Court precedent that the admission of propensity evidence pursuant to California Evidence Code § 1101 violates due process, the decision of the appellate court cannot be said to have contradicted or unreasonably applied clearly established federal law in upholding the constitutionality of section 1101.  See Alberni, 458 F.3d at 866-67 (under AEDPA, habeas relief cannot be granted on claim Supreme Court has reserved).

1    Accordingly, Petitioner has failed to establish that he is

2    entitled to habeas relief on the basis of this claim.

3    III. Prosecutorial Misconduct

4    Petitioner claims that the prosecutor violated his Fifth

5    Amendment due process rights by commenting in violation of <u>Griffin</u>

6    <u>v. California</u>, 380 U.S. 609 (1965), during closing argument and

7    rebuttal on Petitioner's failure to testify.  The appellate court

8    summarized the prosecutor's comments as follows:

9        During closing argument and rebuttal, the prosecution
         commented on defendant's failure to show he satisfied
10       his outstanding checks prior to writing the checks to
         Centurian and Palo Alto Computer.  Defendant's
11       assertion that these comments constituted <u>Griffin</u> error
         is without merit.  (<u>Griffin v. California</u> (1965) 380
12       U.S. 609 (<u>Griffin</u>).)

13       During his closing argument, the prosecutor stated:
         "Well, Mr. Weathington has had an opportunity in this
14       courtroom as a part of our constitutional, democratic
         trial process to present evidence to refute any of
15       these checks to show that well before May 26 or May
         27[,] [1994,] they were paid off, thus they no longer
16       were out there standing as debits against his account.
         Well, has he represented anything to you?"  Defendant's
17       counsel approached the bench and objected to this
         argument.  The prosecutor further stated:  "[w]hat we
18       have is an absence of any showing, an absence of any
         evidence that any of these checks here, check 411, 800;
19       412 for $614, check 413 for $400, 406 for $200 and
         check 441 for $1,300 had in any way been made good or
20       nullified or neutralized prior to the checks being
         written to Mr. Wu and Mr. Lovato.  [¶] . . .  There is
21       no possible way that the checks to Mr. Wu and Mr.
         Lovato could possibly have been good.  [¶]  And who is
22       the one human being on the planet earth who knew that?
         The person who authored these other checks?  Mr.
23       Weathington."

24       During rebuttal, the prosecutor stated:  "Where is the
         evidence then to show that they were paid by some other
25       means? . . .  The only person or persons that can carry
         that out are the defendant himself or his brother
26       Calvin that we know of, and Calvin's testimony if you
         recall, he being the one who eventually is sent out to
27       make good on the checks that really need to be taken
         care of immediately or a house gets lost or somebody
28       stays in jail said, yeah, I paid off these two checks

                                    20

> and then hmm, on some occasion or occasions I went to
> the foreclosure place and made some payment.  Beyond
> that, the evidence that we have is that -- well, we
> have no other evidence to show that any of these checks
> were paid off."

(Resp't Ex. 6 at 11-12 (brackets in original).)  The appellate
court added:

> Defendant ultimately made a motion for a mistrial based
> on the prosecutor's statements during his closing
> argument and rebuttal, and the court denied the motion,
> concluding that there was no violation of defendant's
> Fifth Amendment rights, and if there was a violation,
> it was either harmless error or was cured by CALJIC
> Nos. 2.60 and 2.61.

(Id. at 12)

A.    Applicable Federal Law

Prosecutorial misconduct is cognizable on federal habeas corpus.  A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." Id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").  Where a prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence or to treat the defendant's silence as substantive evidence of guilt, the defendant's privilege against compulsory self-incrimination is violated.  Griffin, 380 U.S. at 615.  While it is proper for the prosecution to address the defendant's arguments, a comment is impermissible if it is manifestly intended to call attention to the defendant's failure to testify or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify.  Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987) (citing United States v. Bagley, 772 F.2d 482, 494 (9th Cir.

21

1    1985), <u>cert. denied</u>, 475 U.S. 1023 (1986)).

2        A prosecutor's comments calling attention to a defendant's
3    failure to testify require reversal only if:  "(1) the commentary
4    is extensive; (2) an inference of guilt from silence is stressed to
5    the jury as a basis for the conviction; and (3) where there is
6    evidence that could have supported an acquittal." <u>Jeffries v.</u>
7    <u>Blodgett</u>, 5 F.3d 1180, 1192 (9th Cir. 1993) (citation omitted),
8    <u>cert. denied</u>, 510 U.S. 1191 (1994).

9        The Ninth Circuit has held that, although the trial court's
10   failure to offer a curative instruction may "compound" <u>Griffin</u>
11   error, whether an instruction is given is not dispositive.  <u>See</u>
12   <u>Beardslee v. Woodford</u>, 358 F.3d 560, 588  (9th Cir. 2004).  "[W]hen
13   the comments are limited in nature and could not have affected the
14   verdict, we have declined to reverse even in the absence of
15   curative instructions."  <u>Id.</u>

16       B.   Analysis

17       The appellate court rejected Petitioner's claim that the
18   prosecutor violated <u>Griffin</u>, stating:

19           We do not believe the prosecutor committed <u>Griffin</u>
             error in this case.  "Under the rule in <u>Griffin</u>, error
20           is committed whenever the prosecutor or the court
             comments, either directly or indirectly, upon
21           defendant's failure to testify in his defense.  It is
             well established, however, that the rule prohibiting
22           comment on defendant's silence does not extend to
             comments on the state of the evidence, or on the
23           failure of the defense to introduce material evidence
             or to call logical witnesses.  [Citations.]" (<u>People</u>
24           <u>v. Medina</u>, (1995) 11 Cal.4th 694, 755.)  Here, like
             <u>Medina</u>, the prosecutor did not comment on defendant's
25           failure to testify.  Rather, he was observing
             defendant's failure to provide evidence that his debts
26           resulting from the outstanding checks had been
             satisfied.  Such observations fall outside the purview
27           of <u>Griffin</u>.

28           The instant case is unlike <u>People v. Guzman</u>, (2000) 80

                                 22

Cal.App.4th 1282, in which the court found the
prosecutor committed <u>Griffin</u> error, "By emphasizing
holes in the defense case that only [the defendant]
could fill, the prosecutor naturally and necessarily
drew the jury's attention to the fact that [the
defendant] did not take the stand." (<u>Id.</u> at p. 1289.)
Defendant was not the only person who could testify as
to whether the debts from the outstanding checks were
satisfied. Each of the outstanding checks represents a
two-party transaction. Certainly, the payees of the
outstanding checks would have known if the debts were
paid, and could have testified as such. As a result,
the prosecutor's statements in this case were not like
those in <u>Guzman</u>, because defendant was not the only
person who could fill in the holes.

In sum, the prosecutor's statements in his closing
argument and rebuttal were a comment on the state of
the evidence and defendant's failure to call material
witnesses or present exculpatory evidence, not on
defendant's choice not to testify. As a result, the
prosecutor did not commit <u>Griffin</u> error in this case.

(Resp't Ex. 6 at 11-13 (brackets in original).)

The appellate court's determination that the prosecutor's

comments were not <u>Griffin</u> error is not an unreasonable application

of United States Supreme Court law. Most of the prosecutor's

comments referred to Petitioner's failure to provide evidence to

support his theory of the case, and were not "manifestly intended

or of such a character that the jury would naturally and

necessarily take it to be a comment on the failure to testify."

<u>United States v. Mende</u>, 43 F.3d 1298, 1301 (9th Cir. 1995) (finding

prosecutor's comments not improper where comments did no more than

remind jury that defense had failed to present certain evidence).

The prosecutor's rhetorical question, "Has he represented

anything to you?" does appear to be a comment on the failure to

testify. Even if this comment violated <u>Griffin</u>, however,

Petitioner has not shown that the prosecutor's comments rendered

his trial fundamentally unfair. See <u>Darden v. Wainwright</u>, 477 U.S.

23

168, 181 (1986) (relevant question is whether the prosecution's closing argument, which included comments implying that the death penalty would be the only guarantee against a future similar act and several offensive comments reflecting an emotional reaction to the case, "so infected the trial with unfairness as to make the resulting conviction a denial of due process").  As discussed above, there was sufficient evidence for the jury to find Petitioner guilty of writing bad checks.  Furthermore, the trial court included in the jury charge CALJIC No. 2.60, which states that a defendant has a right not to testify and that the jury cannot draw inferences from his failure to do so.  The trial court found that any error was harmless and was cured by the instructions.  The prosecutor's comments were not extensive and an inference of guilt from silence was not emphasized as a basis for the conviction.  See Jeffries, 5 F.3d at 1192.  Therefore, habeas relief is not warranted because any Griffin error resulting from the prosecutor's comments did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 638.

Accordingly, the appellate court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  Therefore, Petitioner is not entitled to habeas relief on this claim.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED as to all claims.  The Clerk of the Court shall

24

terminate all pending motions, enter judgment and close the file.

IT IS SO ORDERED.

DATED: 3/14/08

_____
CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

WEATHINGTON,

Case Number: CV05-02923 CW

                    Plaintiff,

**CERTIFICATE OF SERVICE**

    v.

COUNTY OF SANTA CLARA DEPARTMENT
OF CORRECTIONS et al,

                    Defendant.
_____/

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 14, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Charles  Weathington
BEN 586
885 North San Pedro St.
San Jose,  CA 95110

Ross Charles Moody
Attorney General of the State of California
455 Golden Gate Avenue, Suite 11000
San Francisco,  CA 94102-7004

Dated: March 14, 2008

                                        Richard W. Wieking, Clerk
                                        By: Sheilah Cahill, Deputy Clerk